**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **KIMBERLY CARGILL,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:17-cv-562-RWS-JBB** |
| | § | **DEATH PENALTY** |
| **DIRECTOR, TDCJ-CID,** | § | |
| | § | |
| **Respondent.** | § | |

**<u>ORDER</u>**

Before the Court is the second amended petition for writ of habeas corpus filed by Petitioner Kimberly Cargill, a death-sentenced prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division. Docket No. 19. The Court referred this matter to United States Magistrate Judge J. Boone Baxter for consideration pursuant to 28 U.S.C. § 636. The Magistrate Judge issued a 155-page Report and Recommendation ("the Report") recommending Petitioner's second amended petition for writ of habeas corpus, her motion for an evidentiary hearing, and a certificate of appealability be denied. Docket No. 81. Petitioner and Respondent filed objections to the Magistrate Judge's Report. Docket Nos. 92, 94. The parties are entitled to *de novo* review of the objected-to portions of the Report. FED. R. CIV. P. 72(b). At Petitioner's request, the Court heard oral argument on the parties' objections. Docket No. 105.

After *de novo* review of the objections and for the reasons set forth below, Petitioner's and Respondent's objections (Docket Nos. 92, 94) are **SUSTAINED-IN-PART** and **OVERRULED-IN-PART**, and the Report (Docket No. 81) is **ADOPTED AS MODIFIED** as the opinion of the District Court. The petition (Docket No. 19) is **DENIED**.

# BACKGROUND

## I.    Petitioner's Claims for Relief

As outlined in the Magistrate Judge's Report, Petitioner raised four overarching claims for relief. Docket Nos. 19, 81 at 6–7. In Claim 1, Petitioner argues that trial counsel's performance at the guilt/innocence phase was deficient under *Strickland v. Washington*, 466 U.S. 668 (1984) for the following reasons: (a) an allegedly insufficient investigation into and presentation of evidence at trial regarding the theory that the victim in this matter, Cherry Walker, died of Sudden Unexplained Death in Epilepsy ("SUDEP") ("Claim 1(a)"); (b) an alleged failure to properly investigate and question the autopsy conclusions on asphyxiation and to investigate and question other allegedly improper conclusions by the State's medical examiner Dr. Meredith Lann ("Claim 1(b)"); (c) a failure to move for a hearing to challenge the admissibility of the State's expert's opinion on cause of death ("Claim 1(c)"); and (d) a failure to develop evidence on Petitioner's mental state ("Claim 1(d)"). *See generally* Docket No. 81 at 6 (summarizing arguments). Petitioner further asserts trial counsel's deficient performance during the guilt/innocence phase prejudiced Petitioner, and 28 U.S.C. § 2254(d) poses no bar to granting relief on Petitioner's ineffective assistance of trial counsel (IATC) claim. Docket No. 19 at 96–97.

Petitioner's Claim 2 asserts she was denied effective assistance of counsel at the sentencing phase of trial because (a) trial counsel failed to properly prepare and present expert and lay testimony regarding Petitioner's health and trauma ("Claim 2(a)") and (b) trial counsel actively elicited highly damaging testimony from Petitioner's own defense expert ("Claim 2(b)"). *Id.* at 110–115. Petitioner again asserts that trial counsel's deficient performance during the sentencing phase prejudiced Petitioner, and § 2254(d) poses no bar to granting relief on Petitioner's ineffective assistance of counsel claim. *Id.* at 118–19.

In Claim 3, Petitioner asserts her death sentence should be vacated because a sentencing phase jury instruction restricted relevant evidence that the jury could consider as mitigating. *Id.* at 119–24. Petitioner specifically raises a challenge to the constitutionality of the Texas mitigation statute ("Claim 3(a)") and an as-applied challenge to that statute ("Claim 3(b)"). *Id.* Finally, Petitioner's Claim 4 asserts her conviction should be vacated due to insufficient evidence. *Id.* at 124–27.

## II.    The Magistrate Judge's Report and Recommendation

### A.  Claim 1—Petitioner's claim that she was denied effective assistance of counsel during the guilt/innocence phase of trial

The Magistrate Judge finds Claim 1(a) is subject to § 2254(d)'s relitigation bar, concluding as follows:

> In sum, Cargill has failed to meet her burden under the "intentionally difficult standard" of § 2254(d), which "stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Montez v. Lumpkin*, No. CV SA-23-CA-0530-OLG, 2024 WL 3305744, at *1 (W.D. Tex. July 2, 2024) (quoting *Richter*, 562 U.S. at 102 (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996))). As such, Claim 1(a) is subject to § 2254(d)'s relitigation bar. However, even if Claim 1(a) were not subject to § 2254(d)'s relitigation bar, Cargill would not succeed on the merits of her ineffective assistance claim. *See Nelson v. Lumpkin*, 72 F.4th 649, 660 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024) ("Even if Nelson's participation claim were not subject to § 2254(d)'s relitigation bar and assuming, *arguendo*, he could overcome procedural default by showing ineffective assistance of state habeas counsel, he would not succeed on the merits of his ineffective assistance claim."). Cargill is not entitled to habeas relief regarding Claim 1(a).

Docket No. 81 at 92–102. Determining Claims 1(b) and 1(c) contained new arguments not presented to the state habeas court, the Magistrate Judge then found the claims were not exhausted. *Id.* at 103–05. In the alternative, the Magistrate Judge treated Claims 1(b) and 1(c) as variations of the overall ineffective assistance of counsel claim presented to the state habeas court and recommended denying them on the merits under § 2254(b)(2). *Id.* at 105–11.

As for Claim 1(d), the Magistrate Judge found it is procedurally defaulted and unexhausted. *Id.* at 112–13. Specifically, the Report noted that Petitioner "points to nothing in the state habeas proceedings that indicate [she] argued her counsel should have presented expert testimony on her mental state to explain why she burned Walker's body" rendering claim 1(d) unexhausted. *Id.*; *see also id.* at 88 n. 18 ("Claim 1(d) (that trial counsel were ineffective for failing to introduce evidence relating to Cargill's mental health to explain why the fact she burned Walker's body after the death) is unexhausted and is not part of the § 2254(d) analysis."). Additionally, the Magistrate Judge permitted Petitioner to raise her *Martinez* arguments—those about the ineffectiveness of post-conviction counsel to properly raise the ineffective assistance of counsel claim—for the first time in her reply brief but did not rely on new evidence not presented to the state courts. *Id.* at 113–115; *see also* Docket No. 64. The Magistrate Judge concluded that Petitioner did not show her claim was "substantial," as required by the *Martinez* exception to procedural default. Docket No. 81 at 115–17. The Magistrate Judge noted the same analysis that shows Claim 1(d) is not "substantial" also shows it would fail on the merits. *Id.* at 117, n. 22.

Finally, the Magistrate Judge considered the cumulative evidence at the guilt/innocence phase and concluded that Petitioner does not prove either error or cumulative error in Claim 1. *Id.* at 117–19.

## B. Claim 2—Petitioner's claim that she was denied effective assistance of counsel at the sentencing phase of trial

As noted above, Petitioner argues her trial counsel were ineffective at the sentencing phase of trial for failing to properly prepare and present expert and lay testimony regarding Petitioner's mental health and trauma. Specifically, she argues that trial counsel: (1) failed to properly prepare and present expert and lay testimony regarding Petitioner's mental health and trauma (Claim 2(a)) and (2) actively elicited highly damaging testimony from Petitioner's own defense expert Dr.

Antoinette McGarrahan that Petitioner suffers from a personality disorder with psychopathic traits (Claim 2(b)).

The Magistrate Judge found Claim 2(a) is subject to § 2254(d)'s relitigation bar. *Id.* at 128–32. The Magistrate Judge found Claim 2(b) is procedurally defaulted/unexhausted because this particular claim was not presented to the state habeas court. *Id.* at 132–33. The Magistrate Judge then concluded that Petitioner failed to show the *Martinez* exception applies to Claim 2(b). *Id.* at 133–37. According to the Magistrate Judge, the same analysis that shows Claim 2(b) is not "substantial" also shows it would fail on the merits if it were not procedurally barred. *Id.* at 137, n. 27.

The Magistrate Judge went on to consider the affidavit that Petitioner submitted from Derek VerHagen, one of her state habeas attorneys, wherein VerHagen attests that he believed that Petitioner was mentally ill, that Dr. McGarrahan's diagnosis of borderline personality disorder was based on incomplete information, that the Texas Office of Capital Writs's ("OCW") retained expert Dr. James Underhill believed Dr. McGarrahan "may have missed certain diagnoses," and that OCW's failure to investigate Cargill's mental health or raise Claims 1(d) and 2(b) were not the result of "any strategic decision." *Id.* at 137 (citing Docket No. 42-2, ¶¶ 5, 7, 9, 10). The Magistrate Judge reasoned as follows:

> Cargill shows nothing that is inherently ineffective in the described OCW policy as it relates to funding decisions regarding experts. "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective [ ] tactics and strategies." *Richter*, 562 U.S. at 107. Nor was it objectively unreasonable for OCW to abide by their established policy and decide not to seek additional funding based on Underhill's mere difference of opinion from McGarrahan, especially considering that a mere difference of opinion is insufficient to establish an IATC claim. *See Segundo*, 831 F.3d at 352; *see Ex parte Flores*, 387 F.3d 626, 637 (Tex. Crim. App. 2012) (citing *Crittenden v. Ayers*, 624 F.3d 943, 965–66 (9th Cir. 2010) for the proposition that "[a]ttorneys are entitled to rely on the opinions of properly selected, adequately informed and well-qualified experts."). Finally, state habeas counsel was not ineffective for failing to raise such

insubstantial claims. *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013) (explaining that "there was no merit to Garza's claim and that therefore habeas counsel was not ineffective in failing to raise the claim at the first state proceeding").

Lastly, Cargill fails to show prejudice. The undersigned acknowledges that in certain cases it would be prejudicial for a defendant's own expert to testify on direct that the defendant has characteristics of psychopathy. This is not one of them. Even without Dr. McGarrahan's diagnosis, there was substantial testimony as to Cargill's mental health, manipulative behavior, and history of violence from many witnesses. *See* "Facts Relating to Punishment" above. When the "totality of available mitigating evidence" is weighed against the aggravating evidence presented at trial, it is clear Cargill was not prejudiced from any alleged deficiencies in counsels' questioning of their mental health expert. *Trevino*, 861 F.3d at 549; *see also Strickland*, 466 U.S. at 698, (finding no prejudice due to State's overwhelming evidence on aggravating factors supporting the death penalty). Indeed, in cases such as this where "the evidence of [ ] future dangerousness was overwhelming ... it is virtually impossible to establish prejudice." *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 698); *see also Busby v. Davis*, 925 F.3d 699, 726 (5th Cir. 2019) (stating that though mitigation evidence may not have been presented "as effectively as it might have been," a petitioner could not show prejudice when the jury heard evidence regarding an unstable childhood and the "State's case on punishment was strong") (citing *Parr v. Quarterman*, 472 F.3d 245, 258 (5th Cir. 2006)).

Given the strength of the overwhelming evidence establishing Cargill's future dangerousness, Cargill fails to establish that the result would have been different had counsel not elicited testimony from Dr. McGarrahan regarding psychopathic tendencies. *See Russell v. Lynaugh*, 892 F.2d 1205, 1213 (5th Cir. 1989) (finding no ineffective assistance for failure to identify alibi witnesses for the guilt-innocence phase and character witnesses for the punishment phase "[g]iven the weakness of such testimony when juxtaposed with the overwhelming evidence of guilt, the horrifying nature of the crime, and the abundant impeachment material available to the state"); *Ladd*, 311 F.3d at 359 ("For prejudice in the context of failure to present mitigating evidence, Ladd must show that, but for counsel's error, his sentence would have been 'significantly less harsh'. *United States v. Franks*, 230 F.3d 811, 814–15 (5th Cir.2000)."). Cargill was therefore not prejudiced by trial counsels' allegedly deficient questioning of their mental health expert.

In other words, Dr. McGarrahan's testimony does not alter (1) the egregious nature of the crime—Cargill murdering her intellectually disabled babysitter to prevent her from testifying and then dumping her body on the side of the road and burning it—, (2) the damaging aggravating evidence at punishment, and (3) the fact that the State presented its own evidence that Cargill had a personality disorder with traits of psychopathy. Thus, Cargill cannot show a reasonable probability that she would have received a non-death sentence but for trial counsel presenting Dr.

McGarrahan's testimony. *Strickland*, 466 U.S. at 694. Further, Cargill does not argue that any mitigating evidence would have rendered her ineligible for the death penalty, only that it might have influenced the jury's decision. Dkt. No. 19 at 104–07; Dkt. No. 42 at 40–41.

In short, Cargill fails to demonstrate that counsel were deficient or that the results of the punishment phase would have been different had counsel not questioned Dr. McGarrahan as they did. Cargill's allegation is therefore not prejudicial and does not excuse her procedural bar.

*Id.* at 138–40.

Lastly, the Magistrate Judge considered the cumulative evidence at the sentencing phase and concluded Petitioner failed to establish any constitutional error, much less any cumulative error. *Id.* at 140–41 ("Cargill does not prove error nor cumulative error in Claim 2 and thus is not entitled to habeas corpus relief on this ground.").

### C.  Claim 3—Petitioner's claim that the death sentence should be vacated because the sentencing phase jury instruction restricted relevant evidence that the jury could consider as mitigating

The Magistrate Judge first found that Petitioner's constitutional attack on the definition of "mitigating evidence" in Texas's mitigation statute (Claim 3(a)) is baseless. *Id.* at 141–45. Turning to Petitioner's as-applied challenge to the statute (Claim 3(b)), the Magistrate Judge found the claim was procedurally defaulted and precluded from federal habeas review. *Id.* at 145–48. However, according to the Magistrate Judge, "[w]hile case law mandates holding Claim 3(b) is procedurally barred, the Court notes Cargill's claim fails to show a constitutional violation. Supreme Court and circuit precedents show her evidence could be considered under both the mitigation and future dangerousness special issues. Accordingly, it is recommended that habeas relief on this claim should be denied." *Id.* at 148.

**D. Claim 4—Petitioner's claim that the conviction should be vacated due to insufficient evidence**

In her last claim for relief, Petitioner contends the evidence was legally insufficient to establish that she was guilty of capital murder as alleged in the indictment. According to the Magistrate Judge, under the appropriate standard of review, Petitioner "fails to show that the [Texas Court of Criminal Appeals]'s findings and holding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings as required by § 2254(d)." *Id.* at 152–53. The Magistrate Judge found Petitioner's sufficiency of the evidence claim does not warrant federal habeas relief. *Id.* at 153.

**E. Conclusion**

The Magistrate Judge concluded as follows:

> The Court has carefully considered each of Cargill's claims. The Court finds that each of the claims is foreclosed by clear, binding precedent. This Court concludes that under such precedents, Cargill failed to make a substantial showing of the denial of a constitutional right. Cargill has not shown that she is entitled to federal habeas corpus relief, and thus, her petition should be denied.

*Id.* The Magistrate Judge further found that Petitioner is not entitled to a certificate of appealability as to her grounds for relief. *Id.* at 153–54.

## LEGAL STANDARDS

### I.    The Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs federal habeas proceedings. *Nelson v. Lumpkin*, 72 F.4th 649, 656 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024). Out of respect for "our system of dual sovereignty," AEDPA greatly restricts the availability of federal habeas relief to those convicted of crimes in state court. *Id.* (citations

omitted). Chief among AEDPA's federalism-preserving features is the requirement that state prisoners "exhaus[t] the remedies available in the courts of the State" before seeking federal habeas relief. *Id.* (quoting 28 U.S.C. § 2254(b)(1)). Generally, state prisoners satisfy "this exhaustion requirement by raising [their] federal claim before the state courts in accordance with state procedures."[1] *Id.* (quoting *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999))).

This Court must defer to the state court's findings and conclusions, as instructed in 28 U.S.C. § 2254(d), and presume the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard under § 2254(d) is highly deferential and difficult to meet. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). It "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)). State courts are presumed to know and follow the law, *Woods v. Donald*, 575 U.S. 312, 316 (2015), and § 2254(d) "demands that state-court decisions be

---

[1] A narrow exception to the general rules stated in *Shinn* exists under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413, 422 (2013). That exception allows—but does not require—a federal habeas court to excuse a state prisoner's procedural default of a "substantial" ineffective assistance of trial counsel claim where (1) state law forbids raising that claim on direct review or makes it virtually impossible to do so and (2) the prisoner can show his state habeas counsel rendered constitutionally deficient assistance by failing to raise the claim. *Nelson v. Lumpkin*, 72 F.4th 649, 657 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024) (citing *Trevino*, 569 U.S. at 423–24). In the rare case where a state prisoner successfully overcomes procedural default, the federal habeas court then considers the claimed ineffectiveness of trial counsel *de novo*. *Id.* (citations omitted). Critically, however, the federal habeas court's review is limited to the state court record. *Id*. (citing *Shinn*, 596 U.S. at 1734 (holding that "under § 2254(e)(2), a federal habeas court [reviewing a procedurally defaulted claim] may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel")).

given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court." *Shinn v. Kayer*, 592 U.S 111, 112 (2020) (per curiam) (citation omitted). "When a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fair-minded disagreement.' " *Id*. (quoting *Richter*, 562 U.S. at 103).

Further, "[u]nder § 2254(d)," the reasonableness of the state court decision—not whether it is correct—"is 'the only question that matters.' " *Id*. at 124 (quoting *Richter*, 562 U.S. at 102); *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was *incorrect* but whether that determination was *unreasonable*—a substantially higher threshold."); *Hughes v. Vannoy*, 7 F.4th 380, 387 (5th Cir. 2021) ("A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law . . . . Instead, the state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.' " (footnotes omitted)).

## II.    Ineffective Assistance of Counsel and Federal Habeas Law

A defendant raising a Sixth Amendment ineffective assistance claim must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Cruz-Garcia v. Guerrero*, 128 F.4th 665, 674 (5th Cir. 2025) (quoting *Strickland*, 466 U.S. at 687). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland*, 466 U.S. 668, 686 (1984)).

"The court must then determine whether. . . the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Notably, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (quoting *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted in *Cruz-Garcia*)). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### *DE NOVO* REVIEW

I.    **Objections to Claim 1—Petitioner's claim that she was denied effective assistance of counsel during the guilt/innocence phase of trial**

   **(A) Procedural objections to the Report's separating Claim 1 into subparts**

A threshold question before the Magistrate Judge was whether to treat Petitioner's ineffective assistance claim as a single claim or as a series of distinct claims. *See Cruz-Garcia*, 128 F.4th at 675. The Magistrate Judge considered Petitioner's Claims 1(a), 1(b), 1(c), and 1(d) as subparts of Petitioner's more general Claim 1 that she was denied effective assistance of counsel at the guilt/innocence phase of trial. Docket No. 81 at 88, n. 18 (noting Respondent "construes" Claims 1(a), 1(b) and 1(c) "to be variations of the overall claim that trial counsel were ineffective for failing to properly investigate or challenge the State's proffered cause of death at trial" and "therefore considers these claims exhausted" but further explaining that Respondent correctly noted that Claims 1(b) and 1(c) contain new arguments that were not presented to the state habeas court).

Both Petitioner and Respondent object to the Magistrate Judge's treatment of Petitioner's Claim 1 as four separate subparts or claims. Respondent objects to the Report to the extent it construes Claims 1(b), 1(c), and 1(d) as "separate, unexhausted claims." Docket No. 92 at 3–5. According to Respondent, the Magistrate Judge's "disaggregation" of Petitioner's ineffective assistance of trial counsel allegations into separate claims is contrary to *Nelson v. Lumpkin* because Petitioner's theories concerning Walker's death raised in Claims 1(b), 1(c), and 1(d) are "all further allegations of deficiency at the guilt phase of trial" which "fall under the umbrella of the adjudicated claim." Docket No. 92 at 5.

Petitioner argues Claims 1(b) through 1(d) were "made weaker" by having been considered separately rather than as part of the overarching "comprehensive failure of counsel to fully investigate Ms. Cargill's case." Docket No. 108 (Hearing Tr.) at 54:22–55:19; *see also* Docket No. 94 at 17–18. Petitioner further asserts her state habeas petition described in detail trial counsel's failures "not only specifically in relation to SUDEP, but more broadly with regard to the cause and circumstances of Ms. Walker's death generally." Docket No. 94 at 18–19. According to Petitioner, although "articulated in somewhat different terms," *id.* at 20, the grounds raised by Petitioner in Claim 1 do not "fundamentally alter" the grounds she raised in support of her state habeas petition; thus, the Magistrate Judge was required to review the state habeas court's adjudication of each of those grounds. *Id.* (quoting *Nelson*, 72 F.4th at 659).

In *Nelson*, the Fifth Circuit stated as follows:

In both the state and federal habeas proceedings, Nelson raised a single ineffective assistance of counsel claim related to trial counsel's performance at sentencing. Nelson concedes, as he must, that both claims are "similar." . . . The only difference between the claim adjudicated in the state court and the claim presented in federal court is that Nelson pointed out more instances of trial counsel's alleged deficient performance at sentencing in the federal court claim. That is not enough to fundamentally alter the ineffective assistance claim adjudicated in the state court to place the claim in a significantly different legal posture. A state prisoner cannot

aggregate alleged instances of ineffective assistance of counsel to satisfy the *Strickland* deficient performance and prejudice requirements and then disaggregate those theories to create new, unadjudicated claims and thereby circumvent § 2254(d)'s limitations.

72 F.4th at 659–60. The *Nelson* court concluded that Nelson's ineffective assistance claim was "adjudicated on the merits in State court proceedings," and thus, the federal court's review was constrained by the limitations articulated in *Pinholster* and § 2254(d). *Id.* at 660. According to the Fifth Circuit, even if Nelson's "participation claim were not subject to § 2254(d)'s relitigation bar and assuming, *arguendo*, he could overcome procedural default by showing ineffective assistance of state habeas counsel, he would not succeed on the merits of his ineffective assistance claim." *Id.* (noting the court's review would be limited to the record before the state court).

The Court is persuaded that the Report erred in subdividing Claim 1 and sustains the parties' objections to the subdivision. The Fifth Circuit, however, in *Lucio v. Lumpkin*, 987 F.3d 451 (5th Cir. 2021), condemned the practice of "rais[ing] different claims at different times with different facts in the state court, then smush[ing] them all together into a single claim in federal court." *Id.* at 480.[2] This practice has "no basis in law." *Id.*; *see also Nelson*, 72 F.4th at 658 (recognizing that the Fifth Circuit has never held that "a state prisoner could avoid § 2254(d)'s limitations by presenting new evidence that fundamentally altered a claim already adjudicated in state court proceedings"). So, even though the Report may have erred regarding *Nelson*,[3] that does

---

[2] A district court must apply circuit precedent unless that precedent has been overruled. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3rd 425, 442 (5th Cir. 2000). "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). The Fifth Circuit did not give any indication that *Nelson* overruled *Lucio*.

[3] When considering *Lucio* and *Nelson*, if the Report was ultimately correct to take a subclaim-by-subclaim analysis regarding ineffective assistance of counsel and procedural default, the Court

not change the outcome. Like the *Nelson* petitioner, Petitioner remains bound by AEDPA as her federal habeas briefs combined the claims from her initial state habeas application with claims she defaulted in her second successive state habeas application.

### (B) Substantive objections regarding the merits of Claim 1

The Report concluded the state habeas court did not unreasonably apply federal constitutional law in denying Petitioner's IATC claim. Docket No. 81 at 95–97; *see Strickland*, 466 U.S. at 690–91; *see Segundo v. Davis*, 831 F.3d 345, 352 (5th Cir. 2016). Petitioner would have the Court conduct a *de novo* review of the state habeas court's factual findings and conclusions regarding the reasonableness of trial counsel's performance.

Federal courts, however, must presume that a state court's factual determinations are correct and can only find those factual findings unreasonable where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002); *see Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018) (Section 2254(e)(1) " 'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made") (footnotes omitted). Moreover, mere error is not enough; the state

---

finds the Report accurately and thoroughly disposes of Petitioner's claims. Additionally, this Order conducts an alternative merits analysis of Claims 1 and 2 as respective wholes and through its subparts. So, if any of Petitioner's ineffective assistance of counsel subclaims are procedurally defaulted, then this Order's alternative merits analysis can be understood as disposing of any such subclaims.

court's decision must be "based on an unreasonable factual determination. In other words, [habeas relief is not warranted where] even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will v. Lumpkin*, 978 F.3d 933, 942 (5th Cir. 2020), *cert. denied*, 142 S. Ct. 579 (2021).

Accordingly, the Court must determine whether any parts of Petitioner's substantive objections to Claim 1 overcome the limitations articulated in *Pinholster* and § 2254(d). In the model of the *Nelson* court, this Order will also consider the merits of Claim 1 as a whole.[4]

### 1. Objections regarding cause of death (so-called Claim 1(a))

As explained above, the Magistrate Judge construed Claim 1(a) as the successor of Petitioner's state habeas court argument regarding cause of death. Regarding the merits of Petitioner's Claim 1, the Magistrate Judge reasoned as follows:

> The only argument focusing upon an IATC claim is the allegation that counsel failed to conduct any pretrial investigation into the key issue—the cause of Walker's death—related to Cargill's guilt or innocence. Cargill argues that "trial counsel failed to investigate the possibility that Ms. Walker had died from SUDEP." Dkt. No. 19 at 65; *see also id.* at 90 (stating that trial counsel undertook "no investigation into the issue of SUDEP"). Cargill's assertions are not supported by the record. During the state habeas proceedings, trial counsel filed affidavits explaining their trial strategy. 3 SHCR at 521–41 (Harrison) (Dkt. No. 46-6 at 51–71), 3 SHCR at 552–69 (Haas) (Dkt. No. 36-6 at 82–99). Leading up to trial, trial counsel Jeff Haas ("Haas") determined "that it was going to be of utmost importance to attempt [to] determine the cause of death for [the] victim in this cause, Cherry Walker." 3 SHCR at 553 (Dkt. No. 36-6 at 83). Accordingly, Haas "requested the Court to allow [him] to retain Dr. Edward 'Steve' Bolesta ("Dr. Bolesta"), a Forensic Pathologist." *Id.* Haas attested that Dr. Bolesta had assisted him "in numerous cases" and that "both his credentials and integrity [are] above reproach." *Id.* at 553–54 (Dkt. No. 36-6 at 83–84). He provided Dr. Bolesta with Walker's medical records, the autopsy report, and Cargill's recollection of relevant events. *Id.* at 554 (Dkt. No. 36-6 at 84). Dr. Bolesta and Haas "discussed numerous potential manners and means of death including carbon monoxide poisoning,

---

[4] In the alternative, and similar to Respondent's underlying briefing, the Magistrate Judge treated Claims 1(b) and 1(c) as variations of the overall ineffective assistance of counsel claim presented to the state habeas court and therefore recommended denying them on the merits under § 2254(b)(2). Claim 1(d) was not considered as part of a whole by the Report.

asphyxiation, suffocation" as well as "sudden death syndrome and [SUDEP.]" *Id.* Dr. Bolesta informed Haas that he did not believe Walker died of SUDEP, and that, if called to testify, "he would testify that based on a reasonable medical probability that the cause of Cherry Walker's death was not due to SUDEP." *Id.*

Dr. Bolesta agreed that Walker's seizures were "controlled by her medication," lessening the risk of SUDEP. *Id.* at 555 (Dkt. No. 36-6 at 85). Dr. Bolesta's testimony "would not have added anything to the defense case since it was already established in the testimony of Dr. Lann and Dr. Ulrich that people do die of seizures." *Id.* Calling Dr. Bolesta "would have actually been potentially more helpful to the State than it would have been to [Cargill]." *Id.* . . . After an investigation, *id.* at 545–49, 554–56, trial counsel made the strategic decision to forego the risk of calling Dr. Bolesta and to instead create a reasonable doubt by addressing the requisite issues during the cross-examination of Dr. Lann and Dr. Ulrich. *Id.* at 556 (Dkt. No. 36-6 at 86).

Any claim that counsel undertook "no investigation" into Walker's cause of death or SUDEP, or similar claim, therefore fails. Putting aside such unsupported statements, Cargill's argument can be understood that trial counsel failed to undertake an *adequate* investigation into Walker's cause of death. However, trial counsel conducted a reasonable investigation into the facts of this case and retained a qualified expert to aid in the reasonable investigation of cause of death—in this case, a forensic pathologist—Dr. Bolesta. Once Dr. Bolesta informed trial counsel that he agreed with the determination that Walker died due to homicidal violence, trial counsel had no obligation to continue to search for an expert that would disagree. *See Segundo v. Davis*, 831 F.3d 345, 352 (5th Cir. 2016) (counsel "should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses"); *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) (counsel is not required to "canvass[] the field to find a more favorable defense expert"); *see also Turner v. Epps*, 412 F. App'x 696, 704 (5th Cir. 2011); *cf. Hinton v. Alabama*, 571 U.S. 263, 275 (2014) ("The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of the law and facts' is 'virtually unchallengeable.'") (citation omitted)).

Trial counsel made the strategic decision to attempt to elicit reasonable doubt through the effective cross-examination of the State's expert witnesses. Cargill complains that trial counsel, due to their allegedly poor investigation, were unable to rectify Dr. Ulrich's alleged misrepresentations about SUDEP. Dkt. No. 19 at 23–28, 69. But through this strategy, trial counsel elicited from the State's own witnesses that Walker suffered from seizures, that Walker's seizure medications were at sub-therapeutic levels, the general criteria for SUDEP as listed by the United States Food and Drug Administration ("USFDA"), that Walker had a possible bruise inside her mouth, and that seizures can lead to biting of the tongue. RR 51 (Dkt. No. 33-22) at 97, 99–100, 104; RR 55 (Dkt. No. 33-26) at 23.

Trial counsel also effectively impeached Dr. Ulrich's testimony on the relative rarity of SUDEP by having him read from an article on SUDEP statistics on cross-examination. RR 55 (Dkt. No. 33-26) at 22–23. Further, trial counsel succeeded in eliciting from Dr. Lann that she weighed the suspicious circumstances of Walker's death heavily in her cause of death finding. RR 51 (Dkt. No. 33-22) at 100–02.

Given the evidence that trial counsel conducted an investigation regarding SUDEP—including their retention of a forensic pathologist—the state habeas court did not unreasonably apply federal constitutional law in denying this claim. *See Strickland*, 466 U.S. at 690–91; *see Segundo*, 831 F.3d at 352.

Cargill's § 2254(d)(1) arguments are without merit.

Docket No. 81 at 95–97. The Magistrate Judge also found Petitioner's § 2254(d)(2) argument fails. *Id.* at 98–102 (noting, among other things, that Petitioner's argument that she was denied the opportunity to present evidence in her favor before the state habeas court—an argument raised for the first time in her reply—failed on "multiple fronts").

Regarding the first prong of the *Strickland* standard regarding ineffective assistance of counsel—whether trial counsel's conduct and investigation fell below a constitutional minimum—Petitioner contends the Magistrate Judge and the underlying state habeas court erred in finding that her counsel performed an adequate[5] investigation into the cause of death of Walker. Docket No. 108 (Hearing Tr.) at 10:18–11:4. More specifically, she asserts that: (1) her counsel did not seek an expert witness after receiving Dr. Bolesta's opinion—Petitioner's non-testifying forensic pathologist expert—which was not favorable to Petitioner's position that Walker died of SUDEP (Docket No. 94 at 17–32); (2) her counsel failed to seek a qualified SUDEP expert to explain that

---

[5] Petitioner uses the term "adequate;" however, Fifth Circuit authority uses the term "reasonable" to describe the investigation that must be conducted by counsel. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984) (holding that, to establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance).

it was more likely than not that Walker died from a seizure rather than from homicidal violence caused by Petitioner (*id.*); (3) her counsel did not move to exclude the opinion testimony of Dr. Lann—the State's forensic pathologist—regarding Walker's cause of death (*id.* at 32–33); and (4) the state habeas court's findings regarding Claim 1 were unreasonable in light of the expert opinions in Dr. Lhatoo's affidavit (*id.* at 33–36).

At the hearing, Petitioner clarified that she is not claiming that trial counsel had to automatically look for another expert opinion in the face of an adverse opinion from Dr. Bolesta. Docket No. 108 (Hearing Tr.) at 14:17–15:3. For the first time, Petitioner specifically argued that a forensic pathologist who is not an expert in seizures is not the "right" kind of expert for the particular facts of this case. According to Petitioner, trial counsel should have hired a different type of expert, one who is an expert in seizures and who focuses on epilepsy mortality, especially considering an article that trial counsel had in his possession. *See id.* at 15:3–17:13. Petitioner states Jeff Haas, one of Petitioner's trial counsel, had Exhibit 31,[6] which describes multiple risk factors for the possible onset of SUDEP, and that he had underlined 10 risk factors that may have applied to Walker. *Id.* at 19:3–10. Based on the risk factors, Petitioner contends Haas should have known to consult an expert in SUDEP regarding Walker's cause of death. Relying on *Caro v. Calderon*, 165 F.3d 1223 (9th Cir. 1999), Petitioner argues trial counsel provided ineffective assistance of counsel by failing to consult with a SUDEP-specific expert, rather than relying on the opinions of a forensic pathologist.

Petitioner's reliance on *Caro* is misplaced. In that case, the Ninth Circuit held that counsel provided ineffective assistance *at the sentencing phase* when they failed to investigate a

---

[6] Exhibit 31 was attached to the state habeas record (Docket No. 36-5 at 214–24). The document is self-identified as an online article from the "Medscape" website referencing SUDEP.

defendant's organic brain damage or other mental impairments. *Caro*, 165 F.3d at 1226; *see also Hendricks v. Calderon*, 70 F.3d 1032, 1043–44 (9th Cir. 1995). Caro had suffered several head injuries as a child and was significantly exposed to toxins and pesticides as a youth. His counsel was aware of Caro's extraordinary acute and chronic exposure to neurotoxicants, and yet he failed to consult either a neurologist or a toxicologist—experts on the effects of chemical poisoning in the brain. *Caro*, 165 F.3d at 1226–27. Additionally, his counsel failed to provide those experts who did examine Caro with the information necessary to make an accurate evaluation of Caro's neurological system. *Id.*

Putting aside the fact that *Caro* is not binding precedent on the Court, the case is inapplicable for several reasons. First, Petitioner's Claim 1 and corresponding objections are about the guilt/innocence phase of trial, not the sentencing phase. Second, Petitioner's objection relates to evidence surrounding the death of her alleged victim, rather than evidence about Petitioner's own physical and mental well-being. Third, the facts simply do not align. Here, Petitioner's counsel did consult an expert—a forensic pathologist—about the issue at the heart of the *Strickland* claim: Walker's cause of death. In Texas, a forensic pathologist is normally the type of expert who is consulted for a decedent's cause of death, not an expert who specializes in SUDEP. *See* https://hsc.unm.edu/omi/about/faq/forensic-pathologist.html. Moreover, Petitioner concedes that Haas provided Walker's medical information (even if it was only one page) and the SUDEP article(s) he had to Dr. Bolesta. Docket No. 108 (Hearing Tr.) at 30:22–31:1. Unlike the expert in *Caro*, Dr. Bolesta does not claim that he was not provided with the information he needed to offer an opinion regarding Walker's cause of death.

Petitioner also contends that Haas's performance was deficient because he did not seek a SUDEP-specific expert in this case. But Petitioner's challenge does not show that Haas's

performance was unreasonable under existing Fifth Circuit and Supreme Court law. Trial counsel conducted a reasonable investigation into the facts of the case and retained a qualified expert to aid in the reasonable investigation of the cause of death. Once Dr. Bolesta informed trial counsel that he agreed with the determination that Walker died due to homicidal violence, trial counsel had no obligation to continue to search for an expert who would disagree. *See Segundo*, 831 F.3d at 352 (noting counsel "should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses"); *Dowthitt v. Johnson*, 230 F.3d. 733, 748 (5th Cir. 2000) (stating that counsel is not required to "canvass[] the field to find a more favorable defense expert"); *see also Turner v. Epps*, 412 F. App'x 696, 704 (5th Cir. 2011); *cf. Hinton v. Alabama*, 571 U.S. 263, 275 (2014) ("The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of the law and facts' is 'virtually unchallengeable.' ") (citation omitted)).

Petitioner further argues the state habeas court misapplied the prejudice prong of the *Strickland* standard.[7]  According to Petitioner, the Magistrate Judge did not consider that the term "cause of death" is a term of art rather than a factual description, so while the forensic pathologists agreed on the use of the phrase homicidal violence to describe Walker's cause of death, it does not mean she was a victim of homicide. Docket No. 108 (Hearing Tr.) at 18:21–19:1. Petitioner further asserts the state habeas court erred in finding that trial counsel conducted an adequate investigation at the guilt/innocence phase of the trial regarding Walker's cause of death and trial counsel's reliance on Dr. Bolesta's opinions regarding the low probability of SUDEP as a cause of death. *Id.* at 17:13–20.

---

[7] Petitioner bears the burden of proving both prongs of the *Strickland* IATC standard: (1) deficient performance *and* (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The record, however, does not support Petitioner's argument that "[t]he prejudice to Ms. Cargill resulting from trial counsel's inadequate investigation is therefore overwhelmingly clear," because "[h]ad the jury been aware that SUDEP was a possible cause of death, especially in light of the inconclusive autopsy report, there is more than a reasonable possibility that the outcome would have been different." Docket No. 94 at 23. The jury was made aware of SUDEP, as noted in the Report, as "trial counsel elicited from the State's own witnesses that Walker suffered from seizures, that Walker's seizure medications were at sub-therapeutic levels, the general criteria for SUDEP as listed by the United States Food and Drug Administration ("USFDA"), that Walker had a possible bruise inside her mouth, and that seizures can lead to biting of the tongue." Docket No. 81 at 97. Additionally, the Report correctly notes that "[t]rial counsel also effectively impeached Dr. Ulrich's testimony on the relative rarity of SUDEP by having him read from an article on SUDEP statistics on cross-examination." *Id.*

## 2. Objection about the failure to move for a *Daubert/Robinson* hearing (so-called Claim 1(b))

Petitioner objects that the state habeas court was unreasonable in excusing trial counsel's failure to move for a *Daubert/Robinson* hearing[8] regarding Dr. Lann's expert opinions or take any other steps evincing a meaningful strategy to challenge his testimony. Docket No. 94 at 32–33. Petitioner asserts the state habeas court improperly relied on the "inadmissible" and "non-expert" testimony of the testifying medical examiner, Dr. Lann, who was the State's pathologist. She testified that she was "very sure" that Walker died of homicidal violence through a specific means that remains unknown. Docket No. 36-8 at 172. The conclusion she reached was supported by the

---

[8] Under Texas law, this term references a hearing about the admissibility of evidence guided by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).

signatures of the nine other expert pathologists who reviewed her work. *Id*. As the state habeas court noted, defense counsel retained a qualified forensic expert, Dr. Bolesta, who also agreed with Dr. Lann's conclusion on the cause of death. Docket No. 36-8 at 173, 175.

Despite this evidence, Petitioner implies Dr. Lann's entire testimony was inadmissible because, in determining the cause of Walker's death, she considered the motive for murder and the fact that Petitioner set Walker's body on fire after she was dead and tried to destroy evidence of their meeting, while stating she was "absolute and confident" that Walker died of homicidal violence. Docket No. 19 at 88–89. Petitioner, however, cites no authority clearly establishing Dr. Lann's testimony was inadmissible and instead quotes the general strictures in *Daubert*.

To the extent Petitioner claims that the state habeas court erred by not applying evidentiary standards consistent with Petitioner's interpretation of *Daubert*, Docket No. 19 at 98–101, such "[i]nfirmities in state habeas corpus proceedings do not state a claim for federal habeas corpus relief." *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir. 1984); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) (same); *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987) (same). Credibility determinations and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). Thus, the state court's credibility finding in favor of Dr. Lann is entitled to deference. *Valdez*, 274 F.3d at 948 n.11; 28 U.S.C. § 2254(e)(1).

Moreover, trial counsel was not ineffective for electing not to pursue a futile *Daubert* motion. *See Shields v. Dretke*, 122 F. App'x 133, 153 (5th Cir. 2005); *see also Flick v. Warren*,

465 F. App'x 461, 465 (6th Cir. 2012). Petitioner's conclusory claims that such a motion would have succeeded are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

Additionally, the decision not to seek a *Daubert* hearing is a matter of trial strategy viewed through the deferential lens of *Strickland*. Again, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). Petitioner's trial counsel decided not to move to disqualify the State's experts because aspects of their testimony on cross-examination were potentially helpful to Petitioner's case. The trial transcript shows that trial counsel were able to thoroughly cross-examine the State's expert and obtain helpful testimony. *See* Docket No. 81 at 51; Docket No. 33-22 at 97 (confirming an autopsy may or may not show that a seizure occurred), 99–100 (testimony regarding a "possible bruise" on the inside of Walker's mouth and that some soft indications of someone having a seizure include a bruise on the inside of the mouth), 104 (confirming Walker had seizures in the past, that she had been taking seizure medication, and that the toxicology report showed that her seizure medication levels were low); Docket No. 81 at 55; Docket No. 33-26 at 23 (testimony from Dr. Ulrich regarding the criteria for SUDEP).

The decision not to seek a *Daubert* hearing under such circumstances is not so "ill-chosen that it permeates the entire trial with obvious unfairness." *Virgil*, 446 F.3d at 608. Petitioner fails to show that counsel's performance was constitutionally deficient, and that they were not acting as reasonably competent attorneys, and that their trial strategy was not within the range of competence of attorneys in criminal cases when they chose not to request a *Daubert* hearing.

Petitioner fails to present clear and convincing evidence to rebut the state habeas court's factual findings; thus, deferring to those findings, the state habeas court's rejection of the claims was not unreasonable. *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004) (holding that AEDPA requires courts "to presume correct the state court's findings of fact ... even if the hearing was a 'paper' hearing and may not have been full and fair," unless petitioner rebuts presumption of correctness by clear and convincing evidence) (citation and internal quotation marks omitted). Her claims are generally conclusory and involve strategic and tactical decisions made by counsel, which typically do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland*, 460 U.S. at 689 (providing strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson*, 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (providing "[t]his Court has made clear that counsel is not required to make futile motions or objections"). Even if the purportedly objectionable portions of Dr. Lann's testimony had been stricken, Petitioner makes no showing that the jury would not have reached the conclusion that Petitioner murdered Walker based on the other facts in the record. *Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (emphasis added)).

### 3. Objection about the state habeas court's ruling regarding Dr. Lhatoo's affidavit (so-called Claim 1(c))

In her first state application for writ of habeas corpus, Petitioner attached an affidavit from Dr. Samden Lhatoo, an expert in seizure disorders and SUDEP, as an exhibit to her state habeas petition. Docket No. 19 at 86; *see generally Ex parte Cargill*, No. WR-84,320-01, 2017 WL

1496963 (Tex. Crim. App. Apr. 26, 2017) ("*Ex parte Cargill I*"), *cert. denied*, *Cargill v. Texas*, 583 U.S. 947 (2017). Petitioner complains that the state habeas court should have given a higher level of credence to Dr. Lhatoo than to the experts who testified at trial.

The state habeas court reviewed Dr. Lhatoo's affidavit and found that the affidavit did not show "that [Dr. Lhatoo] has any training, or licensure, as an expert in forensic pathology." Docket No. 36-8 at 173. In its Findings of Fact and Conclusions of Law, the state habeas court concluded that Dr. Lhatoo:

> has no generally accepted expertise that would allow him to offer criticism of the opinion of a board-certified forensic pathologist on the cause of an individual's death. His forensic pathological 'conclusion' regarding the expert opinions of Dr. Lann, her cosigners, and coincidently also of the defense expert forensic pathologist, Dr. Bolesta, as to Ms. Walker's cause of death is thus, completely outside his scope of expertise.

*Id*. Accordingly, the state habeas court found that, under the threshold requirement for admissibility, Dr. Lhatoo lacks any training or expertise that would allow him to opine upon the cause of Walker's death or to criticize the opinions of those more qualified than him to offer an opinion regarding the cause of Walker's death. *Id.* at 174.

The state habeas court further found that Dr. Lhatoo did not state he reviewed all the testimony at trial, much of which could have been used to impeach him had he testified. *Id.* For example, Dr. Lhatoo did not discuss "whether he had considered the extremely relevant evidence of [Petitioner's] self-admitted motive, and the blatant consciousness of guilt evidence contained within that testimony." *Id*. "As such, his hypothetical opinion regarding the possibility of SUDEP exists in a void without any relevant connection to the actual facts of this case." *Id*. The court pointed out that the only "objective" Dr. Lhatoo's testimony would provide was to establish "for the jury only that, if they ignored all of the other evidence in the case, it is merely a rare possibility that the victim died of SUDEP." *Id*.

The state habeas court's determination that Dr. Lhatoo's affidavit was not sufficient to establish that trial counsel were ineffective was due in part to his lack of qualifications to opine as to cause of death in state court. The state habeas court's determination, however, is not an unreasonable application of federal constitutional law—it is an application of state law. Docket No. 36-8 at 173 (including cites to the test for admissibility of expert testimony under Texas law). Nor did the state habeas court make an unreasonable determination under the facts in finding that "Dr. Lhatoo agrees entirely with Dr. Ulrich on the rareness of SUDEP," given that Dr. Lhatoo's report expressly stated: "I am in agreement with Dr. [Ulrich]'s testimony as to the relative rarity of SUDEP." Docket No. 36-8 at 177; *see* Docket No. 36-5 at 17.

As noted by the state habeas court, the major points in Dr. Lhatoo's affidavit were elicited on cross-examination of the State's witnesses. Docket No. 36-8 at 174. This decision to attack the State's case on cross-examination is the hallmark of a reasonable trial strategy. *See U.S. v. Bourgeois*, 537 F. App'x 604, 662–63 (5th Cir. 2013) (finding it reasonable where trial counsel decided not to call a witness who would have contradicted the defense theory and where trial counsel elicited the most valuable points the uncalled expert would have made on cross-examination).

To the extent Petitioner objects that the state habeas court merely misapplied *Strickland* by affording too much weight to Dr. Lann's testimony and Dr. Ulrich's testimony, that argument is unavailing. The state habeas court's determination that trial counsel acted reasonably—based on their investigation, their cross-examinations, and the lack of proffered evidence indicating their ineffectiveness—is, at the very least, a reasonable application of federal constitutional law. 28 U.S.C. § 2254(d)(1); *see Richter*, 562 U.S. at 105.

#### 4. Objection to procedural default of so-called Claim 1(d)

In the Report, the Magistrate Judge found that Petitioner's Claim 1(d)—regarding the ineffective assistance of trial counsel to develop evidence of Petitioner's mental state at the time of Walker's death—was procedurally defaulted.[9] Docket No. 81 at 112–17. Petitioner objects to the Report's finding that Claim 1(d) is procedurally defaulted and that the claim is not excused under *Martinez v. Ryan*, 566 U.S. 1, 13–14 (2012).[10] Docket No. 94 at 36.

As explained above, the Court finds the Magistrate Judge erred in treating Claim 1(d) as a standalone claim. Still, the arguments presented in Claim 1(d) do not bolster the merits of Claim 1 as whole. As the Magistrate Judge correctly pointed out, attempting to introduce the new evidence identified in Claim 1(d) at trial would have been an extremely risky proposition. Such evidence would likely have all but guaranteed an affirmative answer by the jury to the future dangerousness special issue at the sentencing phase of trial. There is ample Fifth Circuit authority stating that it is reasonable for trial counsel to avoid tactics that might open the door to a prosecution expert's diagnosis of the defendant with antisocial personality disorder. *See, e.g.*, *Smith v. Davis*, 927 F.3d 313, 337 (5th Cir. 2019) (holding trial counsel pursued a reasonable tactic in not presenting evidence of the defendant's mental illness where the government's psychiatrist had diagnosed the defendant with antisocial personality disorder); *Saldano v. Dir., TDCJ-CID*, No. 4:08-CV-193, 2016 WL 3883443, at *9–10 (E.D. Tex. July 18, 2016), *aff'd sub nom. Saldano*

---

[9] In Claim 1(d), Petitioner specifically argues that expert testimony could have established that her "[ir]rational[]" decisions to dump and burn Walker's body and attempt to remove evidence that they were together that evening were the result of "impaired brain function," rather than indicative that she was trying to remove evidence of a murder. Docket No. 19 at 80.

[10] *Martinez* applies to Texas's postconviction scheme in *Trevino v. Thaler*, 569 U.S. 413, 428 (2013), for "a single claim—ineffective assistance of trial counsel[.]"

*v. Davis*, 759 F. App'x 276 (5th Cir. 2019) (affirming a district court's finding that it was reasonable for trial counsel to avoid testimony that made it likely "the jury would hear rebuttal evidence that [the defendant] had an antisocial personality disorder"); *Fearance v. Scott*, 51 F.3d 1041 (5th Cir. 1995); *see also Nelson v. Davis*, 952 F.3d 651, 665 (5th Cir. 2020) (finding the informed trial tactic of framing a defendant diagnosed with antisocial personality disorder was not a constitutional violation). As explained in the Report, trial counsel sought and obtained an expert opinion suggesting that the tactical approach urged in Claim 1(d) was lacking in substantive merit. Docket No. 81 at 115–17.

### 5. Claim 1 as a whole

The Report concluded the state habeas court did not unreasonably apply federal constitutional law in denying Petitioner's IATC claim. Docket No. 81 at 95–97; *see Strickland*, 466 U.S. at 690–91; *see Segundo*, 831 F.3d at 352. The permissible habeas evidence showed that trial counsel conducted a reasonable investigation regarding SUDEP as a possible cause of death— including their retention of a forensic pathologist. *See* Docket No. 81 at 95–97.

After *de novo* review of the Magistrate Judge's findings related to Claim 1, the Court finds, for all the reasons articulated above, that the state habeas court did not unreasonably apply either prong of *Strickland*. The Court also finds, for sake of completeness, that none of the ineffective assistance arguments contained in Claim 1, individually or together, satisfies the prejudice prong of *Strickland* on the merits. Despite the Magistrate's error in subdividing Claim 1, the Report was ultimately correct that Claim 1 should be denied.

## II.    Objections to Claim 2—Petitioner's claim that she was denied effective assistance of counsel at the sentencing phase of trial

### (A) Procedural objections to the Report's treatment of Claim 2

Both parties object to the Report's treatment of Petitioner's Claim 2 in which she asserts that her trial counsel provided ineffective assistance of counsel at the sentencing phase of her trial by failing to properly prepare and present expert and lay testimony regarding Petitioner's mental health and trauma.[11] Docket No. 19 at 103–04. In Claim 2, Petitioner argued that trial counsel:

(a)    Failed to properly prepare and present expert and lay testimony regarding her mental health and trauma ("Claim 2(a)"), *id.* at 93–102; and

(b)    Actively elicited highly damaging testimony from the defense expert ("Claim 2(b)"), *id.* at 102–04.

The Magistrate Judge addressed the entirety of Claim 2 at Docket No. 81 at 120–41. Both parties object to the Report's treatment of Claim 2. The Report treated Claim 2(a) as exhausted and adjudicated on the merits in state court. Claim 2(b) was construed as a stand-alone, unexhausted claim that was procedurally defaulted and meritless. Petitioner and Respondent argue that Claims 2(a) and 2(b) should have been treated as one claim and not as two separate claims.

Again, there is merit to the parties' procedural arguments regarding the subdivision and such objections are sustained. However, the Court agrees with the Magistrate Judge's denial of Claim 2 in its alternative analysis of both subparts together. For sake of completeness, the Court will go through Petitioner's substantive arguments for Claim 2.

---

[11] Petitioner specifically contends trial counsel conducted an incomplete investigation that failed to uncover available evidence that (1) she suffered from brain damage and five severe but treatable mental illnesses (including bipolar disorder and post-traumatic stress disorder); (2) she had suffered trauma and abuse in her childhood; and (3) nevertheless, there were periods in her life when she functioned well, was a loving and caring mother, and a kind friend. *See* Docket Nos. 19-7 at 2-3; 19-43 at 5, 9–11, 18–20. Petitioner asserts that trial counsel affirmatively presented to the jury the most damning aggravation evidence imaginable: expert testimony that Petitioner met the criteria for being a psychopath or sociopath. Docket No. 34-8 at 50:11–52:2.

**(B) Substantive objections regarding the merits analysis of so-called Claim 2(a)**

Petitioner objects to the Magistrate Judge's recommendations regarding the merits of her Claim 2, specifically to the finding that Claim 2(a) is barred by the relitigation bar of § 2254(d). Docket No. 94 at 39–47. The arguments raised in Claim 2(a) were fully adjudicated on the merits in the state habeas court. Her federal habeas Claim 2(a) is an extension of her seventh ground for relief presented in her state habeas writ. *Id.* In its Findings of Fact and Conclusions of Law (Docket No. 36-8 at 170–242), the state habeas court discussed at length the mitigating evidence trial counsel presented at trial, along with the cross-examination of various witnesses that favored the defense theory. The state habeas court also examined trial counsel's statements and reasons regarding their trial strategy as it pertained to the presentation of mitigating evidence. In *Ex parte Cargill I*, the Court of Criminal Appeals held that Petitioner failed to meet her burden under *Strickland* regarding her seventh ground for relief. *Ex parte Cargill I*, 2017 WL 1496963, at *3.

The Magistrate Judge found that Petitioner's petition did not meet her burden of establishing with clear and convincing evidence that the state habeas court's determinations regarding this specific claim were an unreasonable application of federal law under the AEDPA. Docket No. 81 at 128–29 (citing Docket No. 19 generally and 28 U.S.C. §§ 2254(d)(1), (2)). According to the Magistrate Judge, it was not until Petitioner's reply that she asserted for the first time that the state habeas court made objectively unreasonable findings of fact that trial counsel conducted a legally sufficient mitigation investigation.[12] *Id.* at 129 (citing Docket No. 42 at 32–34). As properly explained by the Magistrate Judge, arguments first raised in a reply brief are

---

[12] In her reply brief, Petitioner argued as follows regarding *Wiggins v. Smith*, 539 U.S. 510 (2003): Investigation into mitigating evidence "should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." Docket No. 42 at 31 (citing *Wiggins*, 539 U.S. at 524 (emphasis in original)).

generally waived. *Id.* According to the Magistrate Judge, Petitioner's "arguments would not move the needle if considered." *Id.* at 130.

The Court agrees with the Magistrate Judge. Even if the Court were to assume that Petitioner's arguments regarding whether trial counsel's investigation was constitutionally deficient were not waived, the Court would find Petitioner's arguments without merit. Petitioner disagrees with the Report's refusal to second guess the state habeas court's factual findings and legal conclusions. In her objections, Petitioner argues the Report ignores that under *Strickland* and its progeny, the state habeas court was required to conduct a comprehensive review of trial counsel's investigation to determine whether that investigation put counsel in a position to make a strategic decision. Docket No. 94 at 33 (citing *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)). According to Petitioner, considered together, "it is clear that if counsel had done a proper mitigation investigation, following up on red flags as to Cargill's mental health and past, the jury would have heard a completely different mitigation case." *Id.* at 40 (citing *Rompilla v. Beard*, 545 U.S. 374, 393 (2005) (finding prejudice where undiscovered mitigation evidence "adds up to a mitigation case that bears no relation to the few naked pleas for mercy actually put before the jury").

At oral argument, Petitioner's counsel argued it was unreasonable for the state habeas court, seeing "red flags in the record," to conclude that trial counsel was entitled to embrace Dr. McGarrahan's "initial partial diagnosis" and that counsel's investigation was sufficient. Docket No. 108 (Hearing Tr.) at 59:1–24. According to counsel, the Supreme Court held in *Wiggins* that "counsel's investigation in that case was inadequate even though counsel obtained a diagnosis from a psychiatrist, tracked down records, but did not follow up with obtaining a social history. So a partial investigation is not sufficient." *Id.* at 59:25–60:5. Counsel argues the state habeas court

made the same mistakes that the Supreme Court addressed in *Wiggins*: it "accepted at face value trial counsel's [representation in an untested statement from trial counsel] that Dr. McGarrahan was aware of Cargill's chaotic and unstable family environment, her relationships with her mother, her ex-husbands, children. . . ." *Id.* at 60:6–16 (further stating the state habeas court, like the court in *Wiggins*, relied on a "list of specialists that were hired by trial counsel and said, well, that list looks good, that's sufficient"). Further relying on *Rompilla*, Petitioner's counsel stated that a diagnosis from an expert does not justify counsel's failure to investigate mental health flags. *Id.* at 60:24–61:5 (further stating "this duty to conduct a complete investigation is a fundamental requirement for. . . effective assistance of counsel").

However, as urged by Respondent's counsel at oral argument, *Wiggins* and *Rompilla* are both "easily distinguishable."

> In *Wiggins*, trial counsel hired a psychologist but did no social background investigation. They had two. . . documents. And that was the entirety of what they had on Wiggins' social background. And what their argument was, well, even though we didn't know about it, our psychologist learned about it when he evaluated Wiggins. And what the Supreme Court said was you don't get to abdicate your duty to conduct a full social background by simply hiring a psychologist.
>
> We know that's not what happened here because they said: We hired a mitigation specialist who did a comprehensive and full social mitigation background investigation. So it's not the same case at all.
>
> As far as *Rompilla*, again, a situation where trial counsel was given a file of an extraneous offense that Rompilla had committed, and they didn't look through the file, and the file was a treasure trove of mitigation information. Again, a clear failure to investigate and discover certain facts.

*See id.* at 83:3–84:3.

According to Respondent's counsel, Petitioner's trial counsel knew everything about Petitioner's background and gave that information to Petitioner's expert who diagnosed her with a personality disorder. *Id.* at 84:8–11. Respondent's counsel noted at oral argument that trial

counsel's affidavits state they started their mitigation investigation in June of 2011, almost one year before trial. *Id.* at 79:16–22. They hired a mitigation specialist, a psychologist, a psychiatrist, and a neuropharmacologist. *Id.* at 79:22–24. Additionally, the mitigation specialist obtained medical, education, and work records and interviewed family members and friends. *Id.* at 80:8–12. Trial counsel decided not to call the mitigation witnesses because they could not refute the aggravating evidence put on by the State. *Id.* at 80:16–19; *see also* 80:20–81:24 (stating the sentencing phase of trial was "truly staggering as far as the people that were willing to come out and testify to aggravating facts against Ms. Cargill, including her own mother, her children, her ex-husbands about the fact that she assaulted them" and further stating that trial counsel did not "want to dilute their mitigation case by putting on a couple of people who might be able to say something nice, so they decided to lean into the diagnosis [of borderline personality disorder with antisocial and psychopathic traits] of their expert, Dr. McGarrahan").

Petitioner submits mental health evidence that was not made part of the state court record, so the Magistrate Judge is correct that they would be barred under § 2254(d) and *Cullen v. Pinholster. See* Docket No. 81 at 131, n. 26; *see also supra* p. 42–50. As further explained by the Magistrate Judge, Petitioner fails to point to anything concrete or prejudicial that the state habeas court missed when considering the analyses of her experts. *Id.* at 131. As noted by the Magistrate Judge, Petitioner's criticism that Drs. McGarrahan and Lipman should have done more to possibly develop different testimony ignores that her counsel made the calculated decision that, in the face of a "great number of punishment witnesses who would testify" about Petitioner's history of abuse and manipulation, they determined it was better to use her mental state and history of violence as a basis for mitigation rather than to dispute it. *Id.* For this same reason, it was not unreasonable for

the state habeas court to conclude that trial counsel were reasonable for not wanting to dilute their strategy by presenting the "meager character evidence" relied upon by Petitioner.

At bottom, Petitioner fails to appreciate the deference this Court must give the state court's findings in the course of its *Strickland* analysis and the deference that must be afforded trial counsel and state habeas counsel regarding their legal strategies. In the context of § 2254(d), the deference due to counsel's representation must be considered in tandem with the deference that must be accorded to state court decisions, which has been referred to as a "doubly" deferential standard. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Here, there is a reasonable argument that trial counsel satisfied *Strickland*'s deferential standard.

### (C) Substantive objections regarding the analysis of so-called Claim 2(b)

In Claim 2(b), Petitioner asserts that her trial counsel were ineffective for eliciting damaging testimony during the sentencing phase. In particular, she notes that trial counsel elicited testimony from Dr. McGarrahan on direct examination that Petitioner suffers from a personality disorder with psychopathic traits. Docket Nos. 19 at 102–04, 42 at 35–39. She also objects to the findings regarding the ineffective assistance of her state habeas counsel. *Id.* She claims that state habeas counsel was unreasonable for failing to raise Claim 2(b) before the state habeas court and for failing to seek funding for further mental health evaluations of herself. *Id.*

In her objections, Petitioner challenges the Report's finding that Claim 2(b) was not presented to the state habeas court before raising Claim 2(b) in this Court. The Report found that Claim 2(b) was unexhausted and procedurally defaulted. *See* Docket No. 81 at 132–33 (citing 28 U.S.C. § 2254(b) (petitioner must exhaust remedies in state court); *Wilder v. Cockrell*, 274 F.3d

255, 259–61 (5th Cir. 2001)). The Report also found that Petitioner failed to overcome the procedural default under *Martinez*. *Id.* at 133–40. The Court disagrees with the Report's findings that Claim 2(b) is procedurally barred but finds the relevant arguments do not overcome *Pinholster* and § 2254(d). In the model of the *Nelson* court, this Order will also consider the merits of Claim 2(b) in conjunction with the arguments raised in Claim 2(a).

In her Claim 2(b), to show her habeas counsel was ineffective for failing to present the substance of Claim 2(b) to the state habeas court, Petitioner presents an affidavit from Derek VerHagen, one of her state habeas attorneys. VerHagen attests that he believed that Petitioner was mentally ill, that Dr. McGarrahan's diagnosis of borderline personality disorder was based on incomplete information, and that the Texas Office of Capital Writs's ("OCW") retained expert, Dr. James Underhill, believed Dr. McGarrahan "may have missed certain diagnoses." Docket No. 42-2 at ¶¶ 5, 7. VerHagen contends that OCW's decisions not to investigate Petitioner's mental health or raise Claim 2(b) were not the result of "any strategic decision." *Id.* at ¶¶ 9, 10. He, however, then describes precisely the type of strategic decision that is "virtually unchallengeable." Docket No. 44 at 6 (citing *Strickland*, 466 U.S. at 690).

VerHagen averred that it was OCW policy not to re-administer neuropsychological testing if Dr. Underhill "determined that it was the correct testing battery, and the test was scored correctly . . . in large part due to the budgetary constraints on the office." *Id*. He also attested that it was OCW policy not to seek additional expert funding from the state habeas court. *Id.* at ¶ 3. Dr. Underhill ultimately found that Dr. McGarrahan properly scored the tests that were given to Petitioner but believed that Dr. McGarrahan might have "missed certain diagnoses." *Id.* at ¶ 7. Per OCW policy, VerHagen did not seek additional funding. *Id.* at ¶ 8.

Petitioner fails to show ineffective assistance of counsel in the described OCW policy as it relates to funding decisions regarding experts. "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective [ ] tactics and strategies." *Richter*, 562 U.S. at 107. Nor was it objectively unreasonable for OCW to abide by its established policy and decide not to seek additional funding based on Dr. Underhill's mere difference of opinion from Dr. McGarrahan, especially considering that a mere difference of opinion is insufficient to establish an IATC claim. *See Segundo*, 831 F.3d at 352; *see Ex parte Flore*s, 387 F.3d 626, 637 (Tex. Crim. App. 2012) (citing *Crittenden v. Ayers*, 624 F.3d 943, 965–66 (9th Cir. 2010), for the proposition that "[a]ttorneys are entitled to rely on the opinions of properly selected, adequately informed, and well-qualified experts."). Petitioner fails to show that state habeas counsel was ineffective by following their budgetary policies regarding the re-administering of neuropsychological testing.

Finally, state habeas counsel was not ineffective for failing to raise insubstantial claims. *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013) (explaining that "there was no merit to Garza's claim and that therefore habeas counsel was not ineffective in failing to raise the claim at the first state proceeding"). The OCW, as frequent state habeas court death penalty practitioners, would be expected to know that attacking trial counsel for their strategic decisions would be futile. The questioning of witnesses and the presentation of evidence are inherently matters of trial strategy when such choices are the result of a "conscious and informed decision on trial tactics." *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003). Decisions regarding the questioning and cross-examination of witnesses are strategic and usually "will not support an ineffective assistance claim," *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). While the OCW may have taken a different approach to questioning Dr. McGarrahan and deciding to

embrace the negative connotations of Petitioner's personality disorder with psychopathic traits, Docket Nos. 19 at 102–04, 42 at 35–39, trial counsel were not ineffective for accepting the information and attempting to humanize Petitioner as having an unwanted mental condition that might be cured in the future. Their trial strategy "is the essence of a tactical decision[,]" as "certainly some juries might have found antisocial personality to be mitigating." *Fearance*, 1995 WL 152759, at *6 (finding that it was a tactical decision for trial counsel to choose not to show evidence of antisocial personality disorder as mitigating evidence).

Accordingly, the Court finds that Petitioner's arguments in Claim 2 do not overcome *Pinholster* and the relitigation bar of § 2254(d). Alternatively, the arguments Petitioner raises in Claim 2, as subparts or a whole, fail on the merits to show ineffective assistance of counsel. Petitioner's Claim 2 is denied.

## III.     Objection to Claim 3(b)—Petitioner's as-applied challenge to the Texas Mitigation Statute

Petitioner objects to the Report's recommendation that the "as-applied" challenge to the Texas Mitigation Statute was procedurally defaulted. Docket No. 81 at 145–48. She asserts that she raised an "as-applied" challenge to the statute on direct appeal. Petitioner, however, does not cite to the page in her appellate brief where she raised an as-applied challenge. *See* Docket No. 35-19. An as-applied challenge is not readily apparent in a review of Petitioner's direct appeal briefing in grounds 10 through 18. *Id.*

In *Cargill v. State*, No. AP-76,819, 2014 WL 6477109, at *20–21 (Tex. Crim. App. Nov. 19, 2014), the Court of Criminal Appeals reviewed Petitioner's challenges to the Texas Mitigation Statute on direct appeal stating:

> Appellant also acknowledges that this Court has previously rejected the issues raised in points of error eleven through eighteen. She avers that she has submitted them on direct appeal in order to preserve them for future post-conviction proceedings. In point

of error eleven, appellant asserts that Article 37.071 violates the Eighth Amendment's prohibition against cruel and unusual punishment because it allows the jury too much discretion and lacks the minimal standards and guidance needed to avoid the arbitrary and capricious imposition of the death penalty. In point of error twelve, appellant asserts that Article 37.071 violates the Fourteenth Amendment's due process requirement because it implicitly places the burden of proving the mitigation special issue on a defendant. In point of error thirteen, appellant asserts that the trial court erred in denying her motion to hold Article 37.071, sections 2(e) and 2(f), concerning the burden of proof at punishment, unconstitutional under Article I, sections 10 and 13 of the Texas Constitution. In point of error fourteen, appellant asserts that the Texas death penalty scheme violates due process because the mitigation special issue fails to require the State to prove an absence of sufficient mitigation circumstances beyond a reasonable doubt, contrary to *Apprendi v. New Jersey* and its progeny.

In point of error fifteen, appellant asserts that the Texas death penalty scheme violated her constitutional rights to be protected from cruel and unusual punishment, to an impartial jury, and to due process of law because of vague, undefined terms in the punishment-phase jury instructions. In points of error sixteen and seventeen, appellant asserts that the Texas death penalty scheme infringed upon her federal and state constitutional rights because it is impossible to simultaneously restrict the jury's discretion to impose the death penalty and allow the jury unlimited discretion to consider all evidence that might militate against the imposition of death.  In point of error eighteen, appellant asserts that the statutory "*Penry*" special issue is unconstitutional under the Eighth and Fourteenth Amendments because it "permits the very type of open-ended discretion condemned by the United States Supreme Court in *Furman v. Georgia*."  As appellant acknowledges, we have previously rejected these claims. *See Saldano v. State*, 232 S.W.3d 77, 104-09 (Tex. Crim. App. 2007). We decline to reconsider them. Points of error eleven through eighteen are overruled.

The language of this opinion indicates that the court did not find an "as-applied" challenge before it. *Cargill*, 2014 WL 6477109, at *20–21. The court further noted that Petitioner argued both that the statutory definition of "mitigation" was facially unconstitutional and that the State's use of the definition in final argument (*e.g.*, " 'There is nothing that lessens that killer's moral blameworthiness') was also unconstitutional." *Id.* at *20. But in disposing of this claim, the court focused on whether the statutory definition of mitigation in the jury charge was facially unconstitutional and did not address any as-applied challenge allegedly raised. *See id.* at *21.

The Court of Criminal Appeals, in disposing of Petitioner's initial state habeas application, held that Claim 14[13] was "procedurally barred because habeas is not a substitute for matters which should have been raised on direct appeal." *Ex parte Cargill I*, No. WR-84,320-01, 2017 WL 1496963, at *3 The conclusion is that Petitioner did not raise an "as-applied" challenge to the mitigation statute as decided on both direct appeal and on state habeas review. A review of the argument contained in Claim 14 of Petitioner's state application for writ of habeas corpus (Docket No. 36-4 at 185–190) does not reflect any language indicative of an "as-applied" challenge.

Federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Court of Criminal Appeals in *Ex parte Cargill I* denied Petitioner's as-applied claim on the ground that it "should have been raised on direct appeal." Therefore, Claim 3(b) is procedurally defaulted. As such, Petitioner is precluded from federal habeas review of this claim unless she can show cause for the default and resulting prejudice or demonstrate that the court's failure to consider her claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner, however, failed to raise any such argument in her second amended petition. *See* generally Docket No. 19. After *de novo* review, Petitioner's objection is overruled.

---

[13] Claim 14 of Petitioner's state application for writ of habeas corpus posits her death sentence should be vacated because the punishment phase jury instruction restricted the evidence that the jury could determine was mitigating. Docket No. 36-4 at 185–190. Claim 14 was divided into two subparts: (1) the Texas statute and Cargill's jury instructions, and (2) Texas's statute unconstitutionally limits the categories of evidence a capital jury may find mitigating and to warrant a life sentence. *Id.*

IV.     **Objection to Claim 4—Petitioner's claim that her conviction and sentence are not supported by sufficient evidence**

Petitioner objects to the sufficiency of the evidence supporting her guilt in the murder of Walker. She specifically asserts that there was no direct evidence that the victim died as a result of her intentional acts. After *de novo* review, the Court finds the Magistrate Judge correctly applied the deference that must be accorded the state habeas court and its findings. *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Harrell v. Cain*, 595 F. App'x 439, 439–40 (5th Cir. 2015). Furthermore, the Court must presume the Court of Criminal Appeals's factual findings to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner's mere disagreement with that court's factual findings is not a basis to decide that the findings are incorrect.

The applicable standard for testing the sufficiency of the evidence in a federal habeas review of a state court conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Under this standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez*, 398 F.3d at 695. "[I]n challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* need be satisfied, even if state law would impose a more demanding standard of proof." *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990) (footnote omitted). "Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction" *Id*. at 287 (footnote omitted); *see Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) ("[W]e should not substitute our view of the evidence for that of the factfinder . . . "); *Cobb v. Wainwright*, 666 F.2d 966, 971 (5th Cir. 1982) ("The jury has the sole responsibility to judge the weight and

credibility of the evidence."). The Court is unable to find any error in the Magistrate Judge's findings and recommendations.

The Court is satisfied that the Magistrate Judge has undertaken an extensive examination of the sufficiency of the evidence issues in this case and has issued a thorough Report with proper deference to the state courts' determinations. Petitioner's objection is overruled.

**V.    Petitioner's claim that she was denied a full hearing before the state habeas court**

In her amended petition and again during the February 25, 2025 hearing, Petitioner objected that the state habeas court did not accept evidence or testimony other than the affidavits of her trial counsel. In their affidavits, trial counsel set out their trial strategy and concerns regarding the aggravating evidence against Petitioner.

Petitioner's objection that the state habeas court's findings were unreasonable because the court did not hold a live hearing and accept live testimony is without merit. As correctly explained in the Report, the state habeas court is not required to hold a live hearing on Petitioner's state habeas petition or call and accept testimony from any witness who Petitioner chooses to call. *See* Docket No. 81 at 99–102. The Fifth Circuit has recognized that a state court's reliance on a paper record without live testimony does not preclude the application of AEDPA deference and the presumption of correctness attached to its factual findings. *See, e.g., Morrow*, 367 F.3d at 315 (holding that AEDPA requires courts "to presume correct the state court's findings of fact . . . even if the hearing was a 'paper' hearing and may not have been full and fair," unless petitioner rebuts presumption of correctness by clear and convincing evidence) (citation and internal quotation marks omitted)); *Valdez*, 274 F.3d at 951 (holding that presumption of correctness and deferential standard of review apply to state court's findings of fact even when reached without "full and fair" evidentiary hearing).

Here, the state court made findings of fact and determinations of credibility that trial counsel's performance was not ineffective and did not prejudice Petitioner's case. These determinations are entitled to a rebuttable presumption of correctness under § 2254(e)(1), without regard to the state court's decision not to hold an evidentiary hearing. *See Valdez*, 274 F.3d at 951. Petitioner's objections are overruled.

## VI.        Objection to the refusal to consider the additional affidavits

Petitioner objects that the Report did not consider the statements or expert reports of Dr. George Woods (Docket No. 19-7), Dr. Bethany Brand (Docket No. 19-34), Dr. James R. Merikangas (Docket No. 19-74), Sean D. O'Brian (Docket No. 18-75), and Philip Wischkaemper (Docket No. 19-76) in its analysis of Petitioner's procedurally defaulted claims. Docket No. 94 at 56–57. The Report evaluated the new evidence that Petitioner attached to her petition, amended petition, and reply to determine whether the Court could consider any of the new evidence submitted in support of her defaulted claims. Docket No. 81 at 81–85.

As explained above, the Court has found the so-called Claims 1(d) and 2(b) were not procedurally defaulted but rather components of their broader claims. As noted in the Report, "AEDPA restricts the ability of a federal habeas court to develop and consider new evidence." Docket No. 81 at 83 (quoting *Shoop v. Twyford*, 596 U.S. 811, 819 (2022)). "Review of factual determinations under § 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding.'" *Id.* "[R]eview under § 2254(d)(1) is [also] limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. As such, "evidence later introduced in federal court is irrelevant." *Id.* at 184. Only in certain, narrow circumstances may a habeas petitioner present evidence that was not part of the state-court record. *Shoop*, 596 U.S. at 819.

Under § 2254(e)(2), where the petitioner has "failed to develop the factual basis of a claim in state court proceedings, a federal [habeas] court may hold an evidentiary hearing on the claim only if the claim relies on (1) a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by [the Supreme] Court, or (2) 'a factual predicate that could not have been previously discovered through the exercise of due diligence.' " *Shinn*, 596 U.S. at 381 (quoting §§ 2254(e)(2)(A)(i), (ii)). The petitioner must then "show that further fact finding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable fact finder' would have convicted him of the crime charged." *Id.* (quoting § 2254(e)(2)(B)).

In other words, § 2254(e)(2) prevents an evidentiary hearing where the petitioner failed to develop the factual basis of a claim unless the claim relies on (1) new law or (2) new facts that could not have been discovered and where the petitioner also shows (3) prejudice.

Here, the new evidence that Petitioner submitted to support her arguments is barred from consideration under § 2254(e)(2), which imposes strict statutory limitations on evidentiary development. *See Pinholster*, 563 U.S. at 185. In light of *Shinn*, the Magistrate Judge correctly did not consider the statements of Dr. Woods (Docket No. 19-7), Dr. Brand (Docket No. 19-43), Dr. Merikangas (Docket No. 19-74), O'Brian (Docket No. 19-75), and Wischkaemper (Docket No. 19-76) in its analysis of Petitioner's claims. Considering that Petitioner failed to meet the requirements of § 2254(e)(2) as it pertains to her new evidence, the objections are overruled.

## VII.    Objection to the recommendation to deny an evidentiary hearing

In her Renewed Motion for Evidentiary Hearing, Petitioner requested an evidentiary hearing on her claims. Docket No. 69. After the parties briefed the issue, the Magistrate Judge recommended that Petitioner's request for an evidentiary hearing be denied in the Report. Docket

No. 81 at 82–89. Petitioner objects to the recommendation and requests that the Court hold an evidentiary hearing on her claims because:

(1)   28 U.S.C. § 2254(d) does not apply because the state habeas court's determinations were objectively unreasonable;

(2)   28 U.S.C. § 2254(e)(2) does not bar an evidentiary hearing because the state habeas court denied Petitioner the opportunity to develop the factual record despite her diligent efforts in pursuing an evidentiary hearing;

(3)   Petitioner is entitled to an evidentiary hearing under pre-AEDPA case law; and

(4)   Petitioner should receive an evidentiary hearing on the procedural question of whether default on two claims is excused under *Martinez/Trevino*.

At the February 25, 2025 oral argument on the parties' objections, Petitioner urged the Court to review *Richards v. Quarterman*, 578 F.Supp.2d 849, 852–53 (N.D. Tex. 2008) ("The conduct of the state trial court in complying with the State's suggestion that the only expansion of the record needed was an affidavit from [counsel], and ordering that a hearing would be granted *by way of affidavit only from* [counsel], was an absurd pretense that Richards was being given a hearing on his application.") (emphasis in original). Docket No. 108 (Hearing Tr.) at 27:16–31:12.

While the preceding *Richards* quote appears persuasive, that quote alone fails to fully explain why it was permissible that the district court granted an evidentiary hearing in that case. It was not solely because the expansion of the state habeas record consisted of an affidavit only from trial counsel. The Fifth Circuit explained in its affirmance on appeal that the district court concluded that trial counsel's performance was constitutionally deficient because she failed to present exculpatory evidence, request a lesser-included offense instruction, place into evidence Richards's medical records from the Department of Veterans Affairs, and, more generally, to interview important witnesses before trial, have an organized plan of defense, and conduct Richards's defense in an acceptable manner. *Richards*, 556 F.3d at 561. The district court

concluded that, but for trial counsel's deficient performance, there was a reasonable probability that the result of Richards's trial would have been different because (1) the jury might not have convicted Richards of murder, (2) the jury might have convicted Richards of a lesser offense, and (3) the judge might have imposed a lesser sentence. The facts in *Richards* are not similar to those present here.

Under 28 U.S.C. § 2254(e)(2), the Court's ability to hold an evidentiary hearing is limited as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A)   the claim relies on—
>
>> (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

### (A) Petitioner's argument that state habeas court determinations were objectively unreasonable

First, in a § 2254 habeas action, a federal court cannot expand the record on a claim adjudicated on the merits in state court. *See Cullen*, 563 U.S. at 181–82. That is, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 181. Because § 2254 "requires an examination of the state-court decision at the time it was made," the Supreme Court has held that "the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court." *Id.* at 182.

Section 2254(d)(1) therefore "bars a district court from conducting [ ] an evidentiary hearing" when the court is adjudicating claims in a habeas petition under that provision. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (finding that a district court erred by relying on evidence obtained from a hearing conducted under 28 U.S.C. § 2254(e)(2) "to conclude that the state habeas court had unreasonably applied *Strickland*" and that the petitioner must instead "overcome the limitation of § 2254(d)(1) on the record that was before the state court'" (quoting *Pinholster*, 563 U.S. at 185)).

Petitioner argues that she has shown that the state habeas court was erroneous in its findings. In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation under *Strickland* and its progeny must also be considered in tandem with the deference that must be accorded to state court decisions, which has been referred to as "doubly" deferential. *Richter*, 562 U.S. at 105. "When section 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 102; *see also Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir.), *cert. denied*, 571 U.S. 883 (2013). Here, Petitioner has not overcome the doubly deferential standard that must be applied to the state court's findings regarding the effectiveness of her trial counsel under *Strickland* and *Richter*.

Moreover, the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold. *See Williams v. Taylor,* 529 U.S. 362, 410 (2000). AEDPA also requires federal habeas courts to presume the correctness of a state court's factual findings unless applicants rebut this presumption with "clear and convincing evidence." § 2254(e)(1). Petitioner

has not overcome the limitations of § 2254(d) on the record that was before the state court and, therefore, she is not entitled to an evidentiary hearing on this basis.

**(B) Petitioner's argument regarding alleged denial of opportunity to develop the factual record**

Second, under AEDPA, requests for an evidentiary hearing are evaluated in accordance with 28 U.S.C. § 2254(e)(2). *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). When a habeas petitioner has failed to develop the factual basis of a claim, her entitlement to an evidentiary hearing is restricted to the narrow exceptions of subsection (e)(2). These exceptions apply where the failure to develop the facts of a claim is solely the result of a decision or omission of the petitioner herself. *Murphy*, 205 F.3d at 815. Petitioner does not show how she meets the narrow exception under § 2254(e)(2).

Overcoming the restrictions in § 2254(e)(2) does not, however, guarantee a petitioner an evidentiary hearing; it merely "opens the door for one," and the district court retains the discretion to grant or deny an evidentiary hearing. *Id.* Further, a full and fair hearing does not necessarily require live testimony. A paper hearing can be sufficient to afford a petitioner a full and fair opportunity to present factual issues pertinent to his case. *Id., see also Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996). Finally, where a district court has before it enough facts to make an informed decision regarding the merits of a claim, the court may refuse to grant an evidentiary hearing, even where the state court made no explicit factual findings. *McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998). Here, the record alone proves a sufficient basis to resolve the issues before the Court. Petitioner has not shown an entitlement to an evidentiary hearing on this basis.

### (C) Petitioner's argument based in pre-AEDPA caselaw

Third, Petitioner asserts that she is entitled to an evidentiary hearing under pre-AEDPA case law. Petitioner's case was decided after AEDPA became effective. Prior to AEDPA, the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts. *Schririo*, 550 U.S. at 473–74; citing *Brown v. Allen,* 344 U.S. 443, 463–464 (1953); *Townsend v. Sain,* 372 U.S. 293, 313 (1963). That basic rule has not changed. *See* 28 U.S.C. § 2254, Rule 8(a) ("[T]he judge must review the answer [and] any transcripts and records of state-court proceedings ... to determine whether an evidentiary hearing is warranted"). Here, the Court has reviewed the file and records of this case and has not encountered any claims that Petitioner raised that require a live evidentiary hearing. Petitioner has had the opportunity to present her claims in written form without the need for a live hearing.

### (D) Petitioner's argument about circumventing procedural default

Finally, Petitioner asserts that she is entitled to an evidentiary hearing pursuant to *Martinez/Trevino*. She correctly states that, pursuant to *Martinez/Trevino*, ineffective assistance of state habeas counsel can operate as cause to excuse a procedural default of an ineffective assistance claim of trial counsel. *Martinez*, 566 U.S. at 16–17; *Trevino*, 569 U.S. at 428–29. The Court, however, has found that there was no procedural default regarding Petitioner's Claims 1 and 2. For completeness, the Court will address Petitioner's arguments here in the event the Report was correct in subdividing Claims 1 and 2, and because Claim 3(b) is procedurally defaulted even after the Court's application of *Nelson*.[14]

---

[14] While the bulk of Petitioner's request for an evidentiary hearing is directed at the ineffective assistance of counsel claim—Claims 1 and 2—the order assumes *arguendo* that such a hearing might yield relevant information to the as-applied constitutional challenge to the Texas mitigation statute.

In *Segundo*, the Fifth Circuit explained that "[t]he Supreme Court in *Martinez*, created a narrow exception to procedural default that 'merely allows' federal merit-review 'of a claim that otherwise would have been procedurally defaulted." *Segundo*, 831 F.3d at 351 (quoting *Martinez*, 566 U.S. at 17). *Martinez* and *Trevino* do not apply here. The Court of Criminal Appeals dismissed Petitioner's underlying claims as an abuse of the writ.[15]  *See Ex parte Cargill*, No. WR-84,320-02, 2020 WL 3270291 (Tex. Crim. App. June 17, 2020). *Martinez* does not create an exception to the statutory bar. *See Gonzales v. Davis*, 924 F.3d 236, 239 (5th Cir. 2019) ("The district court erroneously granted a hearing on the merits of petitioner's claims and denied relief."). Federal habeas claims are procedurally barred if the last state court to review the petitioner's claims unambiguously based its denial on a state procedural bar. *See Harris v. Reed*, 489 U.S. 255, 264 (1989). Here, the court unambiguously held that Petitioner's claims were procedurally barred as an abuse of the writ. *See Ex Parte Cargill*, 2020 WL 3270291, at, *1; *see also, e.g., Garza,*, 738 F.3d at 675 ("A federal habeas claim is barred by procedural default when the state court has rejected the claim pursuant to a state procedural rule that provides an adequate basis for the decision, independent of the merits of the claim.") (citations omitted); *Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010); *Hayes v. Quarterman,* 530 F.3d 336, 342 (5th Cir. 2008).

A hearing on defaulted constitutional claims is warranted only where there is a " 'a viable constitutional claim, not a meritless one, and not simply a search for evidence that is supplemental to evidence already presented.' " *Segundo*, 831 F.3d at 351 (quoting *Ayestas v. Stephens*, 817 F.3d 888, 896 (5th Cir. 2016), *vacated on other grounds by Ayestas v. Stephens*, 138 S. Ct. 1080 (2018).

---

[15] Before the Court of Criminal Appeals, in Claim One, Petitioner argued that trial counsel's failure to investigate and present evidence of [Petitioner's] mental health deprived her of her right to effective assistance of counsel at the guilt phase of the trial." *Ex parte Cargill*, No. WR-84,320-02, 2020 WL 3270291 (Tex. Crim. App. June 17, 2020). In Claim Two, she argued that she "was denied effective assistance of counsel at the sentencing phase of trial." *Id.*

"*Martinez* and *Trevino* protect Texas habeas petitioners from completely forfeiting an IATC claim" but "neither entitles petitioners to an evidentiary hearing in federal court in order to develop such a claim." *Id.; see also Garcia v. Davis*, 704 F. App'x 316, 324 (5th Cir. 2017) ("Because an evidentiary hearing would not have affected Garcia's failure to establish prejudice by counsel's error, the district court did not abuse its discretion in denying an evidentiary hearing on the claim."). Rules governing discovery and evidentiary hearings do not authorize fishing expeditions. *Perillo*, 79 F.3d at 444.

Here, Petitioner has failed to make the necessary showing under § 2254(e)(2). There are no issues of fact that remain unresolved, and there is no clear and convincing evidence to overcome the presumption of correctness afforded the state court's detailed factual findings. Accordingly, Petitioner's objections are overruled and her request for an evidentiary hearing (Docket No. 69) is denied.

## VIII.    Objection to the *Sua Sponte* Denial of a Certificate of Appealability

An appeal from a judgment denying post-conviction collateral relief may not proceed unless a judge issues a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253. The standard for a certificate of appealability requires a petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004). To make a substantial showing, a petitioner is not required to prove that she would prevail on the merits. Rather, she must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483–84. Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner, and the severity of the penalty may be considered in making

this determination. *See Miller v. Johnson*, 200 F.3d 274, 280–81 (5th Cir. 2000). In her objections to the Magistrate Judge's Report, Petitioner argues that four issues warrant the issuance of a certificate of appealability. Docket No. 94 at 52–54.

First, Petitioner argues that reasonable jurists could disagree whether her claim for ineffective assistance of counsel at the guilt phase should be subdivided into four subclaims as was done in the Report. *Id.* at 53. Petitioner and Respondent objected to the Report, arguing that, under *Nelson*, it was incorrect to subdivide such claims. *Id.* at 24–25; Docket No. 92 at 2–6. The Court agrees with the parties and sustains Petitioner and Respondent's objections that the claims should not be subdivided. *See supra* at De Novo Review Part I.A. A certificate of appealability is not warranted where the Court and the parties agree on how the issue should be resolved. Under such circumstances, there is no issue to appeal, and any appeal on such grounds would bear no nexus to any purported "denial of a constitutional right." 28 U.S.C. § 2253(c).

Second, Petitioner relies on *Martinez v. Dretke* to support the proposition that she is entitled to a COA on the failure of trial counsel to present "mental health evidence" at the sentencing phase of trial. Docket No. 94 at 53. Specifically, Petitioner argues she is entitled to a COA because "her counsel failed to prepare and present testimony regarding her mental illness and neurological impairments, or history of abuse, and instead solicited damaging testimony that she was a 'psychopath.' " *Id.* In *Martinez v. Dretke*, trial counsel failed to present evidence of Martinez's mental health issues and the fact that he had been "previously adjudged not guilty by reason of insanity for an unrelated crime" at the sentencing phase. *Martinez v. Dretke*, 404 F.3d 878, 883 (5th Cir. 2005). Before ultimately denying Martinez's claims on the merits, the Fifth Circuit granted a limited COA because "reasonable jurists could debate the *Strickland* issues raised by counsel's failure to present an insanity defense at trial and to argue at sentencing that Martinez

suffered from insanity and/or neurological impairments that affected his ability to conform his conduct to the law's requirements." *Id.* at 887. Here, Petitioner does not claim counsel ignored evidence of a prior adjudication that she was not guilty of some criminal act due to insanity. Additionally, at the sentencing phase in *Martinez*, his family testified "Martinez was very intelligent and had no mental health problems." *Id.* at 887. Petitioner's argument, standing in opposite, is that the mental health issues raised at the sentencing phase—including the notion that she might be a psychopath—was the wrong strategy. For the reasons discussed above, Petitioner does not show the state habeas court acted unreasonably in denying her ineffective assistance of counsel claim. Reasonable jurists would not debate this finding.

Third, Petitioner argues that whether her as-applied constitutional challenge to the Texas mitigation statute was procedurally defaulted is an issue subject to debate among reasonable jurists. Docket No. 94 at 53–54. In support, Petitioner cites *Adams v. Thaler*, 421 F. App'x 322 (5th Cir. 2011), an example of a case in which a certificate of appealability was granted regarding a procedural default issue. Unlike in *Adams*,[16] Petitioner only argues, based on *ipse dixit* and a citation to a portion of her direct appeal brief, that she "substantially met the essential requirements of the Texas state procedural rule requiring habeas petitioners to raise their claims first on direct appeal." Docket No. 42 at 49–50. As explained above, the Court disagrees that Petitioner has

---

[16] Petitioner cites the Fifth Circuit decision in *Adams v. Thaler* which does not contain any legal analysis as to whether a COA is proper and merely acknowledges that the "district court granted Adams a certificate of appealability…on the ten claims Adams presented in his federal habeas petition and on the issue whether two of his claims are procedurally barred." *Adams v. Thaler*, 421 F. App'x 322, 325–26 (5th Cir. 2011). Likewise, after review of the underlying record, the Court notes that the district court in *Adams v. Thaler* does not specifically analyze the issue raised in Petitioner's objections. *Order granting certificate of appealability*, *Adams v. Thaler*, 5:07-cv-180-MHS (E.D. Tex. Aug. 30, 2010), ECF No. 34.

shown that the state habeas court was incorrect in this conclusion, and this issue is not subject to debate among jurists of reason. *See supra* De Novo Review Part III.

Fourth, Petitioner argues that she is entitled to a COA regarding Claim 4 because there is no direct evidence linking her to the crime as was the case in an unpublished district court opinion in *Harrell v. Cain*. Docket No. 94 at 54. However, in *Cain* the mere lack of an eyewitness to an alleged murder was not in and of itself dipositive as to the COA. *Harrell v. Cain*, No. CV 11-989, 2014 WL 12558571, at *2 (E.D. La. Mar. 31, 2014) (emphasis added) (finding reasonable jurists could debate sufficiency of the evidence where "[a]lthough there was testimony at trial placing Harrell beside the victim's body seconds after she was shot and providing Harrell with a motive for the shooting, there were no eyewitnesses to the shooting, no witness saw Harrell with a gun, and *Harrell's mother's boyfriend testified that Harrell was inside his mother's house, down the block from the shooting, at the time the shooting occurred*"). After review, the Court finds there would be no debate among reasonable jurists rewarding the sufficiency of evidence behind Petitioner's conviction and sentence.

Overall, Petitioner has not shown that any of the issues would be subject to debate among jurists of reason. In addition, the questions presented are not worthy of encouragement to proceed further. Accordingly, a certificate of appealability will not be issued.

## CONCLUSION

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Petitioner and/or Respondent objected. *See* 28 U.S.C. § 636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). Upon such review, the Court has determined that while the Report of the Magistrate Judge errs in

subdividing Claims 1 and 2, it is correct in recommending the denial of the petition and a certificate of appealability. Accordingly, it is

**ORDERED** that the parties' objections (Docket Nos. 92, 94) are **SUSTAINED-IN-PART** and **OVERRULED-IN-PART**. It is further

**ORDERED** that the Report and Recommendation of the Magistrate Judge (Docket No. 81) is **ADOPTED AS MODIFIED** as the opinion of the District Court. It is further

**ORDERED** that the petition for the writ of habeas corpus is **DENIED** and the above-styled case is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that a certificate of appealability is **DENIED**. It is further

**ORDERED** that any remaining pending motions in this civil action are **DENIED**.

**So ORDERED and SIGNED this 31st day of March, 2025.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE